UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL PENSION FUND,
AND FRANK AGNELLO, BARRY KAPLAN,
MAURICE FOLEY, ALFRED G. GEROSA,
LAWRENCE LANE, AND MICHAEL
MELNICK, IN THEIR FIDUCIARY                **REPORT AND RECOMMENDATION**
CAPACITY AS THE TRUSTEES OF THE                    CV 02-5506 (NGG)(VVP)
CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL PENSION FUND,

                Plaintiffs,

      v.

ULICO CASUALTY COMPANY,

                Defendant.
-----------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

This matter has been referred to me for a Report and Recommendation, pursuant to Title 28 U.S.C § 636(b)(1)(B), concerning the defendant's motion for summary judgment on the plaintiffs' claim for insurance coverage under a policy issued by the defendant. For the reasons discussed below, the undersigned recommends that the defendant's motion be GRANTED.

## BACKGROUND

This action is brought by the trustees of a multi-union, multi-employer pension plan to compel defendant Ulico Casualty Company to indemnify the trustees and the plan under an insurance contract between the parties. The action arises from the

1

settlement of an earlier action, styled *La Fata v. Cement & Concrete Workers District Council Pension Plan*, CV 99-8506 (NGG). In the *La Fata* case, plan beneficiaries sought to enforce a decision previously made by Judge Nickerson in *Carollo v. Cement & Concrete Workers District Council Pension Plan*, 964 F. Supp. 677, 683-84 (E.D.N.Y. 1997), which held that the pension plan had been in violation of ERISA since 1976.[1] In response to Judge Nickerson's decision in *Carollo*, the trustees amended the plan in 1999 to bring it within the guidelines of ERISA. As a result of those amendments, the plan undertook to pay benefits in conformance with the *Carollo* decision, but only on a prospective basis, commencing January 1, 1997.

In *La Fata*, beneficiaries of the pension fund brought an action against the plan and the trustees to compel them to provide revised benefits not only prospectively for those who retired after January 1, 1997, but also retroactively to those who had retired before that point. As Judge Garaufis observed in a Memorandum and Order approving the settlement of the *La Fata* action, however, payment of revised benefits retroactive to 1976 would have essentially bankrupted the fund within a few years. *La Fata v. Cement and Concrete Workers District Council Pension Plan*, Dkt. No. 99 CV 8506, at 7-8 (E.D.N.Y. Jan. 7, 2002) (*annexed to* Cashman Aff't as Ex. B). The trustees, therefore, settled with the *La Fata* plaintiffs on terms which provided full benefits on a

---

[1] The parties conceded at oral argument in this action that a union pension plan must comply with ERISA. *See* Transcript at 38.

prospective basis but limited the total amount of compensation for past underpayment of benefits to $10,900,000. *Id.* at 1-2.

In the instant case, the plaintiffs-trustees seek a declaratory judgment and damages for an alleged breach of a trustee and fiduciary liability insurance policy issued by the defendant. The policy indemnifies the plan and its trustees for losses that result from actual or alleged wrongful acts committed by the trustees in administering the fund. The plaintiffs assert that the claims made in the *La Fata* action were essentially allegations that the trustees had violated their fiduciary duties, and that the defendant is therefore obligated to indemnify the pension plan for any losses suffered as a result of the *La Fata* action, including any sums the plan is required to pay in settlement of the action and any legal fees and costs incurred in the litigation. The defendant denied coverage under the policy, and has now moved for summary judgment on the plaintiffs' claims.

## DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment will be granted when there is no material issue of fact to be decided and the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(c); *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Institute for Shipboard Educ. v. Cigna Worldwide Inc. Co.*, 22 F.3d 414, 418 (2d Cir. 1994). If a reasonable jury could return a verdict for the non-movant, then a material issue of fact

3

remains in contention and the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The materiality of the facts is determined by the substantive law governing the claims. *Id.*

The burden of proving that no material issue of fact remains in dispute rests on the movant. *Celotex*, 477 U.S. at 322. Once a motion has been made, however, the non-moving party must set forth specific factual allegations to avoid summary judgment. *Kurisoo v. Providence and Worcester R.R. Co.*, 68 F.3d 591, 594 (2d Cir.1995); *Fahle v. Braslow*, 913 F. Supp. 145, 149 (E.D.N.Y. 1996), *aff'd,* 111 F.3d 123 (2d Cir. 1997) (citations omitted). Conclusory, *ipse dixit* assertions will not defeat a summary judgment motion. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Rule 56(c) and (e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994). Any ambiguities and all inferences must be drawn in favor of the non-movant. *Cigna Worldwide*, 22 F.3d at 418; *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990).

**B.     The Insurance Policy and the Plaintiffs' Claim**

    1.     "Wrongful Act" Clause

The insurance policy issued by the defendant agrees to indemnify the plan and the trustees for any loss that the trustees "shall become legally obligated to pay as damages . . . by reason of any Wrongful Act . . . committed or alleged to have been committed by the Insureds . . .." Trustee and Fiduciary Liability Insurance Policy (hereinafter the "Insurance Policy" or "the policy"), Bowers Aff't Ex. A, § I. The policy defines a "Wrongful Act" as "any actual or alleged error or omission or breach of duty committed or alleged to have been committed by the Insureds, either jointly or severally, in the discharge of their fiduciary duties, obligations or responsibilities, including the violation of any Federal fiduciary standards."[2] *Id.*, § II(e). The defendant's central argument on this motion is that the *La Fata* action did not involve any allegations that the trustees breached any fiduciary duties and that therefore no wrongful act occurred giving rise to coverage under the policy. They are correct.

    a.    The *La Fata* Complaint

An examination of the complaints in the *La Fata* case[3] reveals no allegations that the trustees violated any fiduciary duties. There are no allegations that the trustees or the plan failed to administer the pension fund in accordance with the provisions of the

---

[2] The parties do not dispute that the contract is governed by New York law. The court interprets the policy using the plain meaning of the contractual language. *See, e.g., Teichman v. Community Hosp. of Western Suffolk*, 87 N.Y.2d 514, 520 (1996); *Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 355 (1978).

[3] The original complaint in *La Fata*, which was tendered to the defendant by the plaintiffs when seeking coverage, is annexed as Exhibit A to the defendant's Notice of Motion. An amended complaint was later filed which is annexed as Exhibit A to the Affidavit of Richard Cashman submitted by the plaintiffs in opposition to the motion.

5

plan or that they otherwise breached any duty owed to the plaintiffs. Rather, the claims in *La Fata* all rest on allegations that various provisions of the plan itself violated ERISA, first, by failing to give full effect to the *Carollo* decision, and second, by failing to comply with other specific ERISA requirements. *See* Amended Complaint, Cashman Aff't, Ex. A.[4] (As explained more fully below, the fact that a plan's provisions violate ERISA does not amount to a breach of fiduciary duties.) The *La Fata* plaintiffs simply seek additional pension benefits from the plan to which they claim they would be entitled if the plan's provisions complied with ERISA. Because the *La Fata* action does not allege any breaches of fiduciary duties by the trustees or the plan, or indeed any conduct by the trustees that constitutes a breach of fiduciary duties, there is no wrongful act within the meaning of the policy for which the trustees or the plan are entitled to indemnity for losses suffered as a result of the claims made in *La Fata*.

    b.  <u>Fiduciary Duty to Amend the Pension Plan</u>

In an effort to escape the fact that the plaintiffs in *La Fata* fail to allege any breaches of fiduciary duties giving rise to coverage under the defendant's policy, the plaintiffs seek to recast the claims in *La Fata* as claims that arose "by reason of [a] Wrongful Act" committed by the trustees. Insurance Policy, Bowers Aff't Ex. A, § I, Coverage A. They contend that the claims actually arise from a breach of fiduciary duty because they stem from the failure by the trustees to "maintain" a pension plan

---

[4]All of the affidavits and other papers submitted by the plaintiff in opposition to the motion, including the Cashman Affidavit and the exhibits annexed to it, are attached to the Plaintiffs' Memorandum in Opposition.

that complied with ERISA. *See* Plaintiffs' Mem. in Opp. at 4-5, 12. This contention rests on the notion that the trustees had an ongoing fiduciary duty to amend the pension plan to comply with the provisions of ERISA ever since ERISA's effective date in 1976 (the establishment of the pension plan predated ERISA), and that by failing to make appropriate amendments to the plan to bring it into compliance with ERISA after 1976 they breached this duty and gave rise to the *La Fata* claims. The plaintiffs contend that this fiduciary duty is imposed on the trustees both by ERISA and by the trust agreement under which the pension plan is administered.

        *i.*      ERISA

As for the plaintiffs' argument that ERISA imposes on the plan's trustees a fiduciary duty to amend, the Supreme Court has squarely held otherwise. *E.g., Hughes Aircraft Company v. Jacobson*, 525 U.S. 432, 444 (1999); *Lockheed Corporation v. Spink*, 517 U.S. 882, 889-91 (1996). As explained recently in *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 758 (S.D.N.Y. 2003) (Cote, J.) (citing *Spink*, 517 U.S. at 882), the "decision to adopt, modify, or terminate a benefit plan . . . is not a fiduciary act since the statute's defined functions of a fiduciary do not include plan design." The court went on to say,

> The statutory definition of a fiduciary refers to the functions of "management or disposition" of assets and "administration" of a plan. The "management or disposition" language in ERISA, *see* 29 U.S.C. § 1002(21)(A)(i), "refers to the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on." *Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002)(citation omitted). . . .

*Id.* at 758.

In support of their position, the plaintiffs cite *Burke v. Bodewes*, 250 F. Supp. 2d 262, 269-71 (W.D.N.Y. 2003), for the proposition that amendments made to a *multi-employer* pension benefits plan do, in fact, implicate fiduciary duties on the part of the plan's trustees. In so holding, the *Burke* court relied on Second Circuit decisions prior to *Spink* and *Hughes*, which held that plan amendments do implicate fiduciary duties. *Id.* at 269 (citing *Siskind v. Sperry Retirement Program, UNISYS*, 47 F.3d 498 (2d Cir. 1995); *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032 (2d Cir. 1985)). The court distinguished the Supreme Court cases, which dealt with single-employer plans, and found that the Second Circuit's rationale survived the holdings in *Spink* and *Hughes* with regard to multi-employer plans. *Id.* at 270.

The authority cited by the plaintiffs is unpersuasive for several reasons. First, the language of ERISA makes no distinction between single-employer and multi-employer plans. *See* 29 U.S.C. § 1002(21); *see also Hartline v. Sheet Metal Workers National Pension Fund*, 286 F.3d 598 (D.C. Cir. 2002) (no difference between single- and multi-employer pension plans; no fiduciary duty) and *Mushalla v. Teamsters Local No. 863 Pension Fund*, 300 F.3d 391 (3d Cir. 2002) (same). In addition, the language of the *Spink* and *Hughes* opinions neither explicitly nor implicitly suggests that those holdings are limited to single-employer plans. To the contrary, Justice Thomas writes in *Hughes* that "*Spink's* holding, *without exception*, [stands for the proposition that] '[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries.'" 525 U.S. at 445 (emphasis added).

Secondly, the *Hughes* opinion made clear that the "decision to amend a pension plan concerns the composition of the design of the plan itself and does not implicate . . . fiduciary duties *which consist of such actions as the administration of the plan's assets.*" *Id.* at 444 (emphasis added). Even the *Burke* court acknowledged that the breach of fiduciary duty it faced was not one concerning plan design but rather one in which the trustees' actions dealt with distribution of the plan's assets, a traditional "disposition or management" function of a fiduciary. 250 F. Supp. 2d at 270 ("the plaintiff's claims are more akin to the claims in cases which have recognized trustees' fiduciary liability for the financial consequences of plan amendments"). Specifically, the trustees in the *Burke* case allegedly amended the plan to pay out benefits at too high a level and thus placed the plan in a precarious financial position. *Id.* at 266.[5]

### ii. The Trust Agreement

The plaintiffs cite two provisions of the trust agreement in support of their argument that the agreement imposes additional duties on the trustees beyond those imposed by ERISA to make the plan compliant with ERISA. A careful reading of those provisions discloses that they do not impose any such duties.

---

[5] It is somewhat ironic that the plaintiffs should cite the *Burke* decision in support of their argument here. If the trustees here had made amendments to the plan to pay benefits in compliance with ERISA, as the plaintiffs here contend they had a fiduciary duty to do, they would have placed the plan in dire financial straits and thus run afoul of the fiduciary duty identified in *Burke*. Thus, under the plaintiffs' view of the fiduciary duties borne by the trustees here, the trustees would have violated their duties no matter what they did. If they amended the plan they would have violated their fiduciary duty to maintain the plan's solvency. If they did not amend the plan, they would have violated their fiduciary duty to maintain the plan in compliance with ERISA. The law should be extremely reluctant to define fiduciary duties in a way that would impose such a "Catch-22" on trustees.

First, the plaintiffs state that the agreement imposes on the trustees the duties of "maintaining and administering The Pension Fund so that it complies with all federal and State laws and regulations, including ERISA, so that all employer contributions to The Pension Fund may qualify as deductible business expense." Plaintiffs' Mem. in Opp. at 5. They cite Article IV of the trust agreement, which is entitled "Approval of Governmental Agencies" and which reads in full as follows:

> The Pension Fund and Pension Plan heretofore received exemption from Federal Income taxes under the applicable provisions of the Internal Revenue Code. In the event of failure of the Trust Agreement and the Pension Plan to retain approval as a qualified Trust Agreement and Pension Plan under the said provisions of the Internal Revenue Code, or any other applicable provisions of Federal Law as now in effect or as subsequently amended, or if such approval or any ruling in connection therewith shall result in the Employers' contributions constituting taxable income to Employees, the Trustees shall make such changes as are necessary to retain such approval or authority for Employers to deduct payments to the Pension Fund without notifying such payments as taxable income to Employees. Any modification or amendment to this Trust Agreement or the Pension Plan may be made retroactive if necessary to qualify or maintain the Pension Fund and the Pension Plan as exempt under the Internal Revenue Code, as now in effect or hereafter amended or adopted and the regulations issued thereunder. The Trustees shall adhere as closely as possible to the intent of the parties as expressed in this Trust Agreement.

Amendment and Reinstatement of the Agreement and Declaration of Trust of the Cement and Concrete Workers District Council Pension Fund ("Trust Agreement"), Baldo Aff't Ex. 1, art. IV, at pp. 8-9. As is clear from the above language, there is no generalized duty imposed on the trustees to amend the plan to insure that it complies with ERISA. Rather, the duty applies only to retaining approval of the plan to maintain tax-exempt status. Moreover, the duty arises only "[i]n the event of failure of the Trust

Agreement and the Pension plan to retain approval . . ..." *Id.* As the first sentence of article IV states, the Pension Fund and Pension Plan had previously received exemption from taxes under applicable law. There is no allegation in the *La Fata* complaint that the plan had lost its tax-exempt status or that the plan had failed to retain approval as a "qualified" plan under the Internal Revenue Code or other law. There is no allegation that the trustees had failed to make changes necessary to retain the plan's tax-exempt status. Nor is there a claim for refund or reimbursement for taxes paid by the plan or anyone else because the plan had lost its tax-exempt status. Put simply, the duty found in article VI of the trust agreement is not implicated in any of the claims made in the *La Fata* complaint.

The plaintiffs also quote other language from the agreement requiring the trustees to "establish and carry out a funding policy and method consistent with the objectives of the Pension Plan." Plaintiffs' Mem. in Opp. at 5 (misciting Trust Agreement at pp. 8-9). The provision from which the language is quoted is in Article VI of the trust agreement, entitled "Powers and Duties of the Trustees," and provides in pertinent part that "The Trustees shall . . . Establish and carry out a funding policy and method consistent with the objectives of the Pension Plan and the requirements of the Act." Trust Agreement, Baldo Ex. 1, art. VI, § 1(G), at pp. 15-16. Again the language is clear that the duty imposed by this provision has nothing to do with plan design or indeed any duties beyond those imposed by ERISA. The provision has to do with the funding of the plan, a classic function of trustees which falls comfortably within the

11

"management or disposition"and "administration" language found in ERISA, *see* 29 U.S.C. § 1002(21)(A)(i) & (iii), and not with the design of the plan.  Any suggestion that the duty implicated by this provision, at least with respect to compliance with ERISA, is different from, or broader than, the duties imposed by ERISA is expressly dispelled by the requirement that the funding policy and method be "*consistent* with . . . the requirements of the Act."  Trust Agreement, Baldo Aff't Ex. 1, art. VI, § 1(G), at p. 16 (emphasis added).

The court thus concludes that neither ERISA nor the trust agreement imposes on the trustees any generalized fiduciary duty to make changes in the design of the plan to maintain compliance with ERISA.   Accordingly, the breach of fiduciary duty which the plaintiffs contend constitutes a "wrongful act" under the policy simply did not occur, and their claim for indemnification therefore fails.

### 2. Exclusion for Prior Knowledge Clause

Even if the plaintiffs were correct that the trustees had committed a wrongful act by breaching an ongoing, affirmative fiduciary duty, conferred by ERISA or the trust agreement, to amend the plan, the plaintiffs would run afoul of the contractual provision that excludes coverage for wrongful acts committed by the trustees with knowledge that they are wrongful.  The relevant contractual provision, section I of the policy, requires that the insured have "no knowledge of such wrongful act prior to the effective date of the policy."  Insurance Policy, Bowers Aff't Ex. A, § I, Coverage A.

As set forth above, the wrongful act that the plaintiffs assert gives rise to coverage is the trustees' failure to maintain a plan that complied with ERISA. *See* Plaintiffs' Mem. in Opp. at 4-5, 12. Based on the undisputed facts, the trustees knew at the time Judge Nickerson issued the *Carollo* opinion in 1997 that the plan had violated ERISA since its inception in 1976. *Carollo*, 964 F. Supp. at 683-84 (granting summary judgment for plaintiff on claim that plan violated ERISA post-1976). They thus had knowledge that they had failed to maintain the pension plan in compliance with ERISA as of that date, well before April 1, 1999, the effective date of the policy. *See* Insurance Policy, Bowers Aff't Ex. A, at first page. The exclusion of coverage for wrongful acts of which the trustees had knowledge therefore applies.

Plaintiffs' counsel suggested at oral argument that the plaintiffs thought they had fixed the problem in 1999 by enacting an amendment that accrued benefits conforming to ERISA prospectively from January 1, 1997, and thus had no knowledge that they were committing a wrongful act by not making benefits retroactive to 1976. *See* Transcript at 46. There are at least two problems with this argument. First, the plaintiffs submit no affidavits or other evidence to support the notion that they believed the amendments enacted in 1999 completely cured the plan's failure to comply with ERISA since 1976. It is of course their burden as the non-movants to do so.[6] *E.g., Kurisoo*, 68 F.3d at 594. More importantly, as the plaintiffs here themselves

---

[6]Indeed, the 1999 amendments are clear evidence that the trustees were well aware of the *Carollo* decision's holding that the plan had violated ERISA since its inception in 1976 and was a problem that needed fixing. It is difficult to believe that anyone aware of that holding would have believed that amendments that provided only prospective relief from

13

recognize, it was not the 1999 amendments that provided the basis for the plaintiffs' claims in *La Fata*. It was the fact that "[t]he benefit accrual provisions of Defendant Plan, as in effect on April 1, 1976, and as amended from time to time to date, fail to comply with ERISA Section 204(b), 29 USC § 1054(b)." *La Fata* Amended Complaint, Cashman Aff't, Ex. A, ¶ 44. The *La Fata* plaintiffs were not complaining that they were damaged by the 1999 amendments to the plan. They were complaining that they were damaged by the fact that the plan failed to comply with ERISA ever since the effective date of ERISA, and they were seeking to be paid benefits in accordance with what ERISA required since its effective date. Thus, even if the trustees may have believed that the 1999 amendments solved the *Carollo* problem, the adoption of those amendments are not the wrongful act that gave rise to the damages for which the *La Fata* plaintiffs sought recovery.

The plaintiffs cannot escape the fact that the *Carollo* decision established, in 1997, that the pension plan had not been maintained in compliance with ERISA's requirements ever since 1976. They do not dispute that the trustees were aware of the *Carollo* decision before the effective date of the policy in 1999. Thus, to the extent they contend that the wrongful act giving rise to coverage under the policy is the trustees' failure to maintain the plan in compliance with ERISA, the plaintiffs cannot escape the operation of the clause excluding coverage for wrongful acts of which the trustees had knowledge before the effective date of the policy.

---

1997 was sufficient to rectify the plan's non-compliance with ERISA dating back to 1976.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment should be GRANTED.

\*      \*      \*      \*      \*      \*      \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

                                                  *Viktor V. Pohorelsky*
                                                  VIKTOR V. POHORELSKY
                                                  United States Magistrate Judge

Dated:        Brooklyn, New York
                 June 2, 2005