UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL PENSION FUND,
and FRANK AGNELLO, BARRY KAPLAN,
MAURICE FOLEY, ALFRED G. GEROSA,
LAWRENCE LANE, and MICHAEL MELNICK
in their fiduciary capacity as the Trustees of the
Cement and Concrete Workers District Council
Pension Fund

                     Plaintiffs,

      - against -

ULICO CASUALTY COMPANY
                Defendant.
-----------------------------------------------------------X

MEMORANDUM & ORDER
02-CV-5506 (NGG) (VVP)

GARAUFIS, United States District Judge.

On June 2, 2005, Magistrate Judge Pohorelsky issued a Report and Recommendation

("Report") recommending that this court grant defendant Ulico Casualty Company's ("Ulico")

motion for summary judgment in this action. The plaintiffs submitted a timely statement of

objections to the Report, thereby requiring this court to make a *de novo* review of all portions of

the Report to which the plaintiffs specifically objected. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b). Having so reviewed Judge Pohorelsky's Report, I adopt his recommendations in their

entirety and grant summary judgment to Ulico as to all of the plaintiffs' claims.

I.     **Factual Background**

The story of this $10 million insurance coverage dispute begins with the 1997 filing of a

civil action for increased pension benefits by Calogero Carollo, a longtime participant of the

Cement and Concrete Workers Pension Fund Plan ("the Plan"). Carollo, who had worked in

1

employment capacities covered by the Plan from 1969 to 1975 and 1977 to 1996, sued the Plan and its Trustees, claiming *inter alia* that the Plan violated ERISA's minimum accrual rate provisions by extending disproportionately lower pensions to participants who had less than 25 years of continuous covered employment.[1]  Judge Eugene Nickerson agreed with Carollo that the"[t]he Plan fails to satisfy the Act's minimum accrual rates" and that "[t]he Plan's variable rate of accrual conditioned on a temporary break in service violates the Act," and thus determined that Carollo was entitled to summary judgment as to those claims.  Carollo v. Cement and Concrete Workers District Council Pension Plan, 964 F. Supp. 677, 683-84 (E.D.N.Y. 1997). The action then settled prior to the entry of judgment for Carollo, thus leaving to the Trustees the question of how to respond to the court's determination that the Plan that they were charged with administering did not comply with ERISA's requirements.

By October 15, 1998, the Trustees had arrived at a decision, albeit one that would spawn two further lawsuits, including this one.  As described in a letter submitted on that date to the IRS, the Trustees proposed, in light of the Carollo decision, "to amend the Plan to provide for a single benefit formula, based on a single compensation base . . . effective for all Plan participants who have credited service on or after January 1, 1997."  (Baldo Aff. Ex. A at 1.)  The Trustees also argued in this IRS submission that "it would be inequitable, especially because of the financial hardship that would be imposed upon the Plan, to apply the proposed amendment or the

---

[1] The minimum accrual provisions, codified at 29 U.S.C. § 1054, were intended by Congress to prevent employers from "providing inordinately low rates of accrual in the employee's early years of service when he is most likely to leave the firm and by concentrating the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement."  H.R. Rep. No. 93-807 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4688.

Proposed Ruling to participants who retired before January 1, 1997," and that "a retroactive amendment of the Plan to include both active and retired participants would be both unsound and unaffordable." (Id. at 9.) The IRS agreed with Judge Nickerson's assessment that the Plan, as constituted up to that point, did not meet ERISA's minimum accrual standards. The IRS also determined that the proposed amendment would satisfy ERISA's accrual rules "[f]or active participants on January 1, 1997." (Baldo Aff. Ex. B at 4.) (emphasis supplied) The IRS letter did not draw any conclusions as to the Trustees' proposal to leave the Plan unamended with respect to participants who had retired on or before December 31, 1996, however.

The Trustees then adopted the amended Plan described in their IRS submission on February 2, 1999. This amended Plan increased future pension benefit disbursements only for Plan participants who had retired on or after January 1, 1997, leaving participants who had retired prior to this date subject to the same diminished pension benefit accrual rate that Carollo had challenged. Unsurprisingly, this state of affairs displeased some of the pre-1997 retirees, and on December 24, 1999, Aurelio La Fata, Vincenzo Gambino and Giuseppe Mazzone initiated a class action suit ("the La Fata complaint") on behalf of all Plan participants who had retired prior to 1997 with less than 25 years of continuous service. Invoking the court's jurisdiction under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), the La Fata plaintiffs sought "declaratory, injunctive and equitable relief, to require [the Plan and the Plan Trustees] to change the effective date of their Plan amendment to April 1, 1976." (La Fata Compl. ¶ 1.) The complaint further described the "questions of law common to all members of the class" as "whether the terms of the Plan, as amended in 1999, comply with the Carollo Decision and with ERISA's minimum standards, and how to reform the Plan retroactive to April 1, 1976, to bring it into compliance

with such standards." (Id. ¶ 38(c).)  Specifically, the plaintiffs brought claims for relief

stemming from the amended Plan's alleged failure to comply with the minimum benefit accrual

standards set forth in ERISA Section 204(b) [Claims One, Two and Seven], the anti-retroactivity

provisions of § 204(g), [Claims Three and Five] and the anti-forfeiture provisions of § 204(h)

[Claims Four and Six].  None of these sections address the fiduciary duties owed by a Plan

Trustee, and none of the claims based on these ERISA sections expressly allege a breach of

fiduciary duty by any of the Plan Trustees.  The complaint also contains an eight-part prayer for

relief requesting that the court declare the amended plan to be in violation of ERISA's minimum

accrual standards, order the defendants to amend the plan retroactive to April 1, 1976, and adjust

the pension benefits received by all class plaintiffs accordingly.  This prayer for relief likewise

did not allege that the Trustees committed any breach of their fiduciary duties, and did not

request that the Trustees be found liable to the Plan or the individual participants.

Recognizing that the Plan faced liability actuarially valued at between $25.1 million and

$30.1 million based on the relief sought in the La Fata complaint, a sum that threatened the very

existence of the Plan, the Trustees entered into a settlement agreement with the class plaintiffs

which was approved by this court on January 9, 2002.  The Plan and Plan Trustees then, as

required by the terms of the settlement agreement, sought indemnification from present

defendant Ulico Casualty Co. for the costs of the La Fata litigation and settlement agreement

under the terms of a $10 million liability insurance policy ("the Policy").  Ulico refused to

indemnify the Plan or the Plan Trustees, asserting (1) that the conduct complained of in the La

Fata complaint did not constitute a "wrongful act" within the meaning of the policy, (2) that

coverage was not available because the Plan Trustees had known that the Plan was improper

prior to the effective date of the policy, and (3) that claims for pension benefits are not covered under the policy. The present battle over the scope of the Ulico insurance policy soon followed.

## II.     Summary Judgment Standard

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted); see Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the opponent can only create a genuine issue of material fact by citing competent, admissible evidence. Glasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (citing Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999)). When deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. See Anderson, 477 U.S. at 255; Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995).

In reviewing the Report, I am mindful that "summary judgment frequently is denied in

[insurance disputes] because issues of fact are present concerning whether the injury or activity involved is within the scope of the insurance policy." 10B Wright Miller & Kane, Federal Practice and Procedure § 2730.1 (3d ed. 1998) (collecting cases). However, summary judgment nonetheless may be granted in contract disputes, including insurance cases, where the contract is plain and unambiguous and there is no genuine dispute of fact as to any issue external to the contract. Brass v. Am. Film Techs., Inc., 987 F.2d 142, 148-49 (2d Cir. 1993). A contract is unambiguous when it is not "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993).

## III. Judge Pohorelsky's Report and Recommendation

After hearing oral argument, Judge Pohorelsky issued a Report recommending that Ulico's motion for summary judgment be granted. He first found that because the La Fata complaint "does not allege any breaches of fiduciary duties by the trustees or the plan, or indeed any conduct by the trustees that constitutes a breach of fiduciary duties, there is no wrongful act within the meaning of the policy for which the trustees or the plan are entitled to indemnity." (Report at 6.) This conclusion was based on three subsidiary findings: (1) under the Ulico policy, a Wrongful Act must occur "in the discharge of [the Trustees'] fiduciary duties"[2]; (2) the

---

[2] "Wrongful Act" is defined in Section II(e) of the Ulico policy to mean: "any actual or alleged error or omission or breach of duty committed or alleged to have been committed by the Insureds, either jointly or severally, in the discharge of their fiduciary duties, obligations or responsibilities, including the violation of any Federal fiduciary standards."

Trustees could not have breached a fiduciary duty in amending the pension plan, because the Supreme Court has explicitly held that amending a pension plan is not a fiduciary act within the meaning of ERISA, thus abrogating prior Second Circuit cases holding that amending a multi-employer pension plan, such as the one at issue here, is a fiduciary act; and (3) that the Trustees' conduct did not violate any additional fiduciary obligations imposed by the Trust Agreement.

Judge Pohorelsky also found that in any event, the provision limiting coverage to instances where "the Insureds had no knowledge of such wrongful act prior to the effective date of the Policy" bars the plaintiffs from achieving any recovery under the contract. See Section I, Coverage A.[3] Interpreting this provision, in accordance with the parties' joint understanding, as barring coverage for "wrongful acts committed by the trustees with knowledge that they are wrongful," Judge Pohorelsky concluded that the Trustees "knew at the time Judge Nickerson issued the Carollo opinion in 1997 that the plan had violated ERISA since its inception in 1976 . . . well before April 1, 1999, the effective date of the policy." (Report at 12-13.)

Having decided each of these issues in Ulico's favor, Judge Pohorelsky declined to address Ulico's further contention that the exclusion outlined in Section IV(a) of the insurance policy provides an independently sufficient bar to coverage.[4]

---

[3] Coverage A of the Ulico policy, provides that Ulico shall "pay on behalf of the Insureds any Loss, subject to the limits of liability, as the Insureds acting in their capacity as Trustees or employees of the Trust described in the Declarations, shall become legally obligated to pay as damages for claim or claims which are first made against the Insureds, during the Policy Period by reason of any Wrongful Act, as defined herein, committed or alleged to have been committed by the Insureds or any person retained by the Insureds, while acting in any capacity directly connected with such Trust provided further that the Insureds had no knowledge of such wrongful act prior to the effective date of the Policy."

[4] This section provides that: "This insurance does not apply to any claim for or arising out of: (a)

**IV.    Discussion**

The plaintiffs now raise four principal objections to the Report.  First, the plaintiffs assert that Judge Pohorelsky should have permitted them to develop a more complete factual record during discovery.  In particular, they complain they were not permitted to conduct depositions or obtain "documents relating to the drafting history of the Policy, or documents revealing in particular the intention behind the Policy's definition of 'Wrongful Act,' or the intended scope of the exclusions on which Ulico has relied in denying Plaintiffs' coverage request."  (Pl. Obj. at 2.) Second, they contend that Judge Pohorelsky improperly construed both the Ulico policy and the contours of the La Fata complaint in favor of the insurer, an approach which they describe as contrary to New York law.  Third, they assert that the Report erred in concluding that the Trustees did not breach any fiduciary duty to the Plan in knowingly administering a pension plan that violated ERISA's minimum accrual rate requirements.  Finally, the plaintiffs take issue with the Report's conclusion that the policy exclusion for known prior wrongful acts bars coverage in this case, asserting that a reasonable trier of fact could have concluded that the 1999 amendment would have satisfied the Plan's obligations under Carollo, and that the issue is not suitable for

---

(1) any Wrongful Act of the Insured seeking an adjudication, declaration or determination as to the eligibility or non-eligibility of any person or persons to receive benefits or participate in the Trust or Plan;
(2) any Wrongful Act of the Insured based upon, involving or arising out of the receipt of or non-receipt of benefits from the Trust or Plan by any person or persons or for damages or benefits arising therefrom;
(3) any Wrongful Act of the Insured based upon, involving or arising out of the failure of any Insured to modify, alter, amend, rescind or reform the Plan or Trust instrument with regard to the participation or eligibility of any person or persons in the Trust or Plan or for damages or benefits arising therefrom;
except to the extent that the Insured's Wrongful Acts have impaired the financial ability of the Plan or Trust to pay approved benefits to any participant or beneficiary.

resolution on summary judgment in any case. I address each of these objections in turn.

A. Scope of Discovery

The plaintiffs first object that this case is not ripe for a summary judgment motion because they did not have an opportunity to "discover information that is essential to [their] opposition to the motion." Sutera v. Schering Corp., 73 F.3d 13, 18 (2d Cir. 1995) (internal citations and quotation marks omitted). Specifically, the plaintiffs contend that they were prevented from discovering documents that might reveal Ulico's intentions in drafting the definition of Wrongful Act that ultimately found its way into the policy that they purchased from Ulico.

The usual practice of the district courts in the Second Circuit does appear to be to allow documents pertaining to drafting history to be discovered in coverage disputes by parties adverse to insurance companies. See, e.g., Mariner's Cove Site B Assocs. v. Travelers Indem. Co., No. 04 Civ.1913 (KMW) (RLE) 2005 WL 1075400, at *1 (S.D.N.Y. May 2, 2005) ("documents regarding similar claims of other insureds, the drafting history of a policy, and claims manuals are relevant and discoverable in actions to recover insurance reimbursement"). Accord Stonewall Ins. Co. v. National Gypsum Co., No. 86 Civ. 9671(SWK), 1988 WL 96159, at *3 (S.D.N.Y. Sept. 6, 1988); Young v. Liberty Mut. Ins. Co., No. 3:96-CV-1189 (EBB), 1999 WL 301688, at *5 (D. Conn. Feb. 16, 1999); Charles Turi Jewelry Co., Inc. v. The Hanover Ins. Cos., 1990 U.S. Dist. LEXIS 8358, at * 4-6 (S.D.N.Y. July 10, 1990), vacated in part by Charles Turi Jewelry Co., Inc. v. The Hanover Ins. Cos., 1990 U.S. Dist. LEXIS 8939 (S.D.N.Y. July 18, 1990). Accordingly, there is, at first blush, some force to the plaintiffs' contention that they should have been permitted to conduct broader discovery in this case and that discovery should

be reopened to allow them to do so.

However, Judge Pohorelsky's decision to allow only limited discovery in the run up to this summary judgment motion, even if incorrect, does not mean that summary judgment may not be granted at this time. It is axiomatic that the parol evidence rule precludes consideration of evidence extrinsic to the contract—such as internal documents concerning the drafting history of a provision—unless the relevant terms of the policy are ambiguous. See Kass v. Kass, 696 N.E.2d 174, 180 (N.Y. 1998) ("Ambiguity is determined by looking within the four corners of the document, not to outside sources"); Schneider v. Cont'l Cas. Co., 989 F.2d 728, 732 (4th Cir. 1993); Ostrager & Newman, Handbook on Insurance Coverage Disputes § 1.01[b] (12th ed. 2004). Because, as discussed in further detail below, none of the relevant policy terms is ambiguous, the documents detailing the drafting history of the Ulico policy cannot be considered "essential" to the plaintiffs' opposition; to the contrary, this extrinsic information could not have been included in my consideration of the policy's meaning.

I also note that much of the information sought from Ulico by the plaintiffs appears to be relevant only to Ulico's unilateral intentions in preparing the policy form, rather than the mutual intentions of the parties in preparing the contract. However, "the subjective views of the insurer's officials, never communicated to the insured until . . . litigation cannot establish the parties' intent." Alfin, Inc. v. Pacific Ins. Co., 735 F. Supp. 115, 120 (S.D.N.Y. 1990). Accord Ostrager & Newman § 1.01[b] (12th ed. 2004). Thus, even if the policy were ambiguous, much of the information that the plaintiffs likely would have discovered would have been irrelevant to the court's analysis of the intended scope of coverage. In light of the foregoing, this dispute is ripe for adjudication on the defendant's motion for summary judgment, notwithstanding the

plaintiffs' inability to reach documents and conduct depositions detailing the drafting history of the Ulico policy form.

B.     Rules of Construction

The plaintiffs next protest that the Report failed to construe the Ulico policy in favor of the insured, and likewise erred in "constru[ing] the La Fata complaint as narrowly as possible rather than, as required by the law, considering whether the complaint alleged any facts which even potentially might have brought the matter within the scope of the protection for which Ulico charged its premiums." (Pl. Obj. at 5-6.)  These objections are without merit.

Judge Pohorelsky was not required to apply the rule that insurance policies are construed in favor of the insured because, under New York law, that rule is applicable only where the contract has been found to be ambiguous.  See Breed v. Ins. Co. of North America, 385 N.E.2d 1280, 1282 (N.Y. 1978) ("Obviously, before the rules governing the construction of ambiguous contracts are triggered, the court must first find ambiguity in the policy.")  Judge Pohorelsky did not find any ambiguity in the relevant terms of the Ulico insurance policy, and therefore properly declined to construe the policy in favor the plaintiffs.

The plaintiffs also charge that Judge Pohorelsky took an improperly narrow view of the La Fata complaint in failing to perceive that "[t]he Policy applies not just when a 'wrongful act' is alleged but when a 'wrongful act actually occurs.'" (Pl. Obj. at 14.)  However, Judge Pohorelsky clearly accepted this interpretation of the Policy, at least for the purposes of his discussion, in concluding that "the La Fata action does not allege any breaches of fiduciary duties by the trustees or the plan, or indeed *any conduct by the trustees that constitutes a breach of fiduciary duties*." (Report at 6.) (emphasis added)  This objection therefore is without merit.

11

Finally, the plaintiffs assert that coverage under the Ulico policy is triggered by any error, omission or breach committed by the Insureds, "whether the Trustees breached their fiduciary duties to the Pension Plan or not." (Pl. Obj. at 14.) This interpretive move was properly rejected by Judge Pohorelsky, as it runs directly counter to the language of the Policy. The Ulico Policy provides coverage only for "any actual or alleged error or omission or breach of duty committed or alleged to have been committed by the Insureds . . . *in the discharge of their fiduciary duties, obligations or responsibilities*" (emphasis supplied). Judge Pohorelsky thus properly followed the plain meaning of the contract entered into by the parties in concluding that only a breach, error or omission committed by the Insureds in the course of fulfilling a fiduciary obligation imposed by ERISA or by the Trust Agreement can trigger coverage under the Ulico Policy.

C.     Fiduciary Duties

I now turn to the heart of the dispute between Ulico and the plaintiffs. The plaintiffs concede, as they must, that "[t]he La Fata complaint did not include a count labeled 'breach of fiduciary duty as such." (Pl. Obj. at 8.) They nonetheless maintain that the La Fata suit "put at issue" a claim that the Trustees violated their fiduciary duties under ERISA. Id. The plaintiffs present three separate rationales in support of this conclusion. First, they argue that the plain language of ERISA § 404 establishes that the trustees of a plan violate their fiduciary duties by administering a plan that does not comply with ERISA's provisions. The plaintiffs next maintain that the law of the Second Circuit makes clear that the trustees of multi-employer plans act in a fiduciary capacity when enacting amendments to such plans, and that intervening Supreme Court decisions holding that trustees do not act as fiduciaries when amending pension plans are inapposite because single employer plans were at issue in both of those decisions. Third, the

plaintiffs urge that the Trustees breached additional fiduciary duties imposed upon them in the Trust Agreement in failing to amend the Plan to conform to the terms of ERISA's minimum benefit accrual requirements following the Carollo decision.  Each of these arguments is without merit.

### 1. *The Trustees' Did Not Breach a Fiduciary Duty by Simply Complying with a Flawed Plan*

Trustees do not breach their fiduciary duties under ERISA simply by presiding over a plan which fails in some respect to conform to one of ERISA's myriad provisions.  Rather, a trustee breaches an ERISA fiduciary duty only where, when acting as a fiduciary within the meaning of ERISA § 3(21)(A) (29 U.S.C. § 1002(21)(A)), the trustee fails to discharge one or more of the duties described in 29 U.S.C. § 1104.  See In re World Com, 263 F. Supp. 2d 745, 757 (S.D.N.Y. 2003)  ("The 'threshold question' in an action charging breach of a fiduciary duty under ERISA 'is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint.'") (quoting Pegram v. Herdrich, 530 U.S. 211, 226 (2000)).  See also 29 U.S.C. § 1109(a) (subjecting to personal liability "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this sub-chapter.")

Of course, a trustee may not hide behind the terms of the trust documents to protect himself from liability where there is an "'inherent inconsistency' between a provision in a plan document and a fiduciary duty expressed elsewhere in ERISA."  Dardaganis v. Grace Capital

Inc., 889 F.2d 1237, 1242 (2d Cir. 1989) (quoting Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 568 (1985). Nevertheless, it is clear that the inquiry into whether a plan trustee has breached a fiduciary duty must be squarely directed at determining whether any of the trustees' actions or omissions in managing and administering the plan breached an ERISA fiduciary duty, rather than on whether the terms of the plan administered by the trustee violated ERISA in some respect.

The proposition that "a trustee who administers a pension plan knowing it to be in violation of ERISA acts in violation of his fiduciary duties under ERISA," while perhaps facially attractive, is based on an overly broad reading of ERISA § 404(a), and comes to this court conspicuously unsupported by caselaw. (See Pl. Obj. at 9.) Section 404(a) provides, in relevant part, that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D). The plain meaning of this provision is that if the terms of the plan documents and instruments are consistent with ERISA, a plan trustee has a fiduciary duty to adhere to those terms. See, e.g., Dardaganis, 889 F.2d at 1242. And as elementary logic teaches, the contrapositive of this statement is equally true: a plan trustee does not have a fiduciary duty to comply with any term of the plan documents which is not consistent with ERISA's requirements.

However, the plaintiffs' proposed construction of this statutory provision—that a plan trustee owes a fiduciary duty to depart from any provision of the plan documents which he knows to violate ERISA and/or to amend that provision—goes significantly beyond the plain command

14

of the statute.  It therefore comes as no surprise that the plaintiffs are unable to identify a single

case holding that a plan trustee necessarily breaches a fiduciary obligation by complying with any

provision of the plan which he knows to violate ERISA.  Their attempt to divine such a holding

from Lockheed Corp. v. Spink, 517 U.S. 882 (1996) is thoroughly unavailing, as the Supreme

Court explicitly declined to reach the question of whether the plan sponsors in that case had

breached a fiduciary obligation to the plan in adhering to the terms of the plan.  Id. at 892.  ("It is

not necessary for us to decide the question whether the Retirement Committee members acted as

fiduciaries when they paid out benefits according to the terms of the amended Plan, however,

because we do not think that they engaged in any conduct prohibited by [ERISA].")  Moreover,

the quoted passage from Spink, in describing the unanswered question as whether the plan

sponsors acted as *fiduciaries* when they engaged in the conduct that was alleged to have violated

ERISA, provides further support for this court's determination that the proper inquiry is not

whether the plan violated ERISA, but rather whether the Trustees, while acting in a fiduciary

capacity, violated any of ERISA's enumerated fiduciary duties.  It is to this question which I next

turn.

2.  *Trustees Do Not Act as ERISA Fiduciaries in Amending Plan Documents*

The plaintiffs next assert, citing Chambless v. Masters, Mates & Pilots Pension Plan, 772

F.2d 1032, 1040 (2d Cir. 1985) and Siskind v. Sperry Retirement Program, 47 F.3d 498, 505-06

(2d Cir. 1995), that as plan sponsors of a multiemployer pension plan, the Trustees acted in a

fiduciary capacity when they adopted the 1999 plan amendments.  (Pl. Obj. at 10.)  They further

argue that Chambless and Siskind remain good law despite intervening Supreme Court decisions

holding that "[p]lan sponsors who alter the terms of a plan do not fall into the category of

15

fiduciaries." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443 (1999) (quoting Lockheed

Corp. v. Spink, 517 U.S. 882, 890 (1996)). The plaintiffs argue that Hughes and Spink did not

overrule Chambless and Siskind because they concerned single employer pension plans, and,

accordingly, that "[t]he Supreme Court has had no occasion to consider whether trustees

amending multi-employer plans should be governed by different standards given the special

context in which they act." (Pl. Obj. at 11.) See Siskind, 47 F.3d at 506 ("In the multiemployer

setting, trustees amending a pension plan affect the allocation of a finite plan asset pool to which

each participating employer has contributed. For that reason trustees administering a

multiemployer plan are expected to act solely for the benefit of beneficiaries and are barred from

acting on the employers' behalf.") (citations and quotation marks omitted). The plaintiffs'

position has been adopted by the Western District of New York, while the Third Circuit and

District of Columbia Circuit have read Hughes and Lockheed as foreclosing the argument that

the amendment of a multi-employer plan is a fiduciary act. Compare Burke v. Bodewes, 250 F.

Supp. 2d 262, 270 (W.D.N.Y. 2003) (holding that "there is nothing in the express holdings of

[the Supreme Court cases] which directly refutes the Second Circuit's rationale with respect to

the nature of trustees' duties in administering a collectively bargained multi-employer plan.");

with Walling v. Brady, 125 F.3d 114, 118-20 (3d Cir. 1997) ("[W]e hold that the simple fact that

the plan at issue is a multiemployer plan is insufficient to cause the fiduciary duty to attach to the

Trustees' actions") and Hartline v. Sheet Metal Workers' Nat'l Pension Fund, 286 F.3d 598, 599

(D.C. Cir. 2002) ("Nothing in the Supreme Court's decisions or ERISA itself creates an

exemption for multiemployer pension plans.")

   I respectfully disagree with the Burke court's conclusion that the rationale underlying the

Second Circuit's holdings in Chambless and Siskind—that plan trustees act as fiduciaries when amending a multiemployer pension plan because such amendments affect the allocation of a finite plan asset pool to which each participating employer has contributed—can survive the direct holdings of Spink and Hughes. The trouble with the Siskind rationale, after Spink, is that it looks outside of ERISA's definition of fiduciary to find an external, policy-based rationale for imposing a fiduciary obligation upon a plan sponsor. Both Spink and Hughes, in contrast, squarely hold that a person becomes a fiduciary with respect to an ERISA plan "only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration," as set forth in ERISA § 3(21)(A).[5] Spink, 517 U.S. at 890 (quoting Siskind, 47 F.3d at 505). This restrictive view of ERISA fiduciary responsibilities provided the direct basis for the Supreme Court's conclusion that because the statutory definition of fiduciary functions does not include plan design, "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries," and thus, "the act of amending a pension plan does not trigger ERISA's fiduciary provisions." Id. at 890-91.

It is also apparent that the fact that amendments to multiemployer plans affect the allocation of a finite plan asset pool does not bring the act of amendment of multiemployer plans within ERISA's three-part definition of fiduciary function. First, the "management or disposition" language contained in § 3(21)(A)(i) has been held to "refer[] to the common

_____

[5] ERISA § 3(21)(A) provides: "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on." Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2d Cir. 2002) (citation omitted). These day-to-day oversight decisions differ greatly from a trustee's decision concerning the amendment of a pension plan. Second, plan sponsors typically do not "render investment advice for a fee or other compensation . . . with respect to any moneys or other property of [a] plan" in amending a pension plan. See ERISA § 3(21)(A)(ii); 29 U.S.C. § 1002(21)(A)(ii). There certainly has been no allegation that the Trustees did so here. Finally, subparagraph (iii), which makes a plan sponsor a fiduciary to the extent that "he has any discretionary authority or discretionary responsibility in the administration of such plan" does not bring a fiduciary's decision to amend a plan within the definition of ERISA's fiduciary functions. That provision merely imposes upon plan sponsors an obligation to administer the plan according to its terms; it creates no obligation whatsoever with respect to a trustee's actions in changing the plan documents. See Varity Corp. v. Howe, 516 U.S. 489, 502 (1996). ("The ordinary trust law understanding of fiduciary 'administration' of a trust is that to act as an administrator is to perform the duties imposed, or exercise the powers conferred, by the trust documents.")

In short, nothing about the fact that the trustee of a multiemployer plan presides over a limited asset pool to which multiple employers have contributed distinguishes him from a trustee of a single employer plan for the purposes of ERISA's definition of fiduciary function. The Second Circuit's prior holdings that the plan sponsors of multiemployer pensions plans act as fiduciaries when they amend the plans they oversee therefore have been overruled, and the Trustees of the Plan did not act as fiduciaries when they amended the Plan documents in 1999.

### 3. *The Trustees Did Not Breach Fiduciary Duties Imposed by the Plan Documents*

The plaintiffs next contend that even if the Trustees did not violate fiduciary duties created by ERISA in enacting the 1999 amendments and operating the Plan in accordance with those amendments, they violated fiduciary obligations imposed by the Trust Declaration by adopting amendments that did not comply with ERISA's requirements.  (Pl. Obj. at 15-18.)  Judge Pohorelsky credited the plaintiffs' assertion that the Trustees could have committed a "Wrongful Act" within the meaning of the Ulico Policy by breaching an obligation contained in the Trust Declaration, but found that the provisions cited by the plaintiffs did not impose any general duty to make the Plan compliant with ERISA.  (Report at 9.)  Judge Pohorelsky was correct.

Article IV ("Approval of Governmental Agencies") and Article XV, § 2 ("Exempt Trust") jointly require that "[i]n the event of failure of the Trust Agreement and the Pension Plan to retain approval as a qualified Trust Agreement and Pension Plan under said provisions of the Internal Revenue Code . . . or if such approval or any ruling . . . shall result in the Employers' contributions constituting taxable income to Employees, the Trustees shall make such changes as are necessary to retain such approval or authority for Employers to deduct payments to the Pension Fund without notifying such payments as taxable income to Employees."  Trust Decl. Art. IV.  See also Trust Decl. Art. XV § 2 ("The provisions of the Trust Agreement and the Pension Plan shall be and remain such as to constitute the Pension Plan as an exempt trust under the Internal Revenue Code.  To this end, the Trustees shall promptly amend this Trust Agreement and the Pension Plan to be and remain such an exempt trust."); Trust Decl. Art. VI § 1(F) (giving the Trustees power to "[a]mend the Pension Plan from time to time, provided that such

amendments comply with the purposes hereof.")  From this, the plaintiffs argue that "any

amendment adopted by the Trustees . . . had to be consistent with ERISA in order to comply with

the Trust Declaration," and that the Trustees therefore breached their obligations to the Plan by

amending the Plan in a manner that did not comply with ERISA.  (Pl. Rep. Obj. at 2.)

The plaintiffs' argument fails on this count because, as the plaintiffs themselves

intermittently concede, the Trust Agreement does not simply charge the Trustees to comply with

ERISA, but obligates the Trustees to comply with "all applicable Federal, State and Municipal

laws and regulations, including . . . [ERISA] . . . so that all employer contributions received by

the [Pension Plan] are tax exempt."  Trust Decl. at 2.  In other words, the "express purpose" of

the Trust Agreement, as cited by the plaintiffs, is "to ensure that the Pension Plan complied with

ERISA *so that employer contributions to the pension fund would be tax deductible*."  (Pl. Obj. at

16) (emphasis added).  In order to breach this obligation, then, the Trustees would have to have

acted, or failed to act, in a way that threatened the tax-qualified status of the Plan in adopting the

1999 amendments or in administering those amendments.

The trouble for the plaintiffs is that, far from threatening the tax-qualified status of the

Plan, the 1999 amendments actually ensured the tax-qualified status of the Plan going forward

and helped persuade the IRS to grant the Plan total relief from potential penalties for its non-

compliance dating back to 1982.  See IRS Technical Advice Memorandum dated Feb. 9, 1999,

Baldo Ex. B at 4-5.  Accordingly, the facts in the record confirm that the Trustees fully satisfied

the obligation actually imposed by the Trust Agreement—to preserve the tax-exempt status of the

Plan against threats to that status like the Carollo decision—by presenting a proposed Plan

amendment to the IRS for approval, receiving approval, and then enacting and administering the

changes that the tax authorities had signed off on.  There is absolutely no substance to the plaintiffs' claims that the Trustees breached their duty to preserve the Plan's tax-qualified status in pursuing this course of action, and thus no merit to the contention that the Trustees committed a "Wrongful Act" by violating an obligation imposed by the Trust Agreement.

      D.      <u>Prior Knowledge</u>

Judge Pohorelsky also concluded that "even if the plaintiffs were correct that the trustees had committed a wrongful act by breaching an ongoing, affirmative fiduciary duty . . . to the plan, the plaintiffs would run afoul of the contractual provision that excludes coverage for wrongful acts committed by the trustees with the knowledge that they are wrongful."  (Report at 12.)  <u>See</u> Ulico Policy § 1 (requiring that the insured have had "no knowledge of such wrongful act prior to the effective date of the policy.")  The plaintiffs now challenge this conclusion as well, claiming (1) that Judge Pohorelsky failed to follow New York law because he placed the burden of proof on the insureds to prove the non-applicability of this policy exclusion, (2) that the record does contain evidence suggesting that the Trustees thought that they had cured the Plan of its deficiencies with the 1999 amendments; and (3) that issues relating to the knowledge or intent of the parties may not be resolved on summary judgment.  (Pl. Obj. at 18-21.)

The plaintiffs' objections are unavailing.  Here, the parties appear to agree that the prior knowledge exclusion removes from coverage any wrongful act undertaken by an insured with knowledge of the wrongfulness of that act.  Further, the plaintiffs do not, and could not, dispute that the Trustees had actual knowledge of the <u>Carollo</u> decision prior to the effective date of the policy.  With this undisputed factual predicate before him, Judge Pohorelsky properly resolved this claim on summary judgment.

The plaintiffs' first objection conflates the burden of persuasion placed upon insurers who invoke policy exclusions under New York law with the burden of production borne by non-movants on summary judgment in federal court.  It is axiomatic that while the burden of persuasion remains with the same party throughout a litigation, the burden of production may shift onto a non-movant on summary judgment even if that party does not bear the ultimate burden of persuasion at trial.  See, e.g., Celotex v. Catrett, 477 U.S. 317, 331 (1986) ("[A]n affirmative showing [by the moving party, where the moving party bears the ultimate burden of persuasion,] shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery.")  Ulico having pointed to evidence in the record demonstrating that the plaintiffs had knowledge of the Carollo decision, and thus of its natural import, Judge Pohorelsky properly turned to the plaintiffs' opposition and looked in vain for affidavits or other supporting materials from which one could infer that a genuine issue remained for trial.  In doing so, he followed the law, both New York and federal, to the letter.

The plaintiffs' second objection—that the IRS's technical advice memorandum lulled the Trustees into believing that they had cured the Plan of its accrual rate deficiencies—is insufficient, standing alone, to rebut Ulico's showing that the plaintiffs had actual knowledge that the Plan did not comply with ERISA.  This is because the IRS letter only determined that the then-proposed amendment would satisfy ERISA's accrual rules "[f]or active participants on January 1, 1997."  (Baldo Aff. Ex. B at 4.) (emphasis supplied).  The IRS memorandum, in contrast, said nothing about participants who retired before January 1, 1997, i.e., the soon-to-be

members of the La Fata class. Since the IRS letter said nothing about the Plan with respect to pre-1997 retirees—other than to agree with Judge Nickerson that the pre-Amendment plan violated ERISA's backloading standards—the plaintiffs' current claim that this letter, by its own terms, creates a factual dispute as to the propriety of the amended Plan for pre-1997 retirees, is baseless.

This shortcoming notwithstanding, the plaintiffs' suggestion that they honestly believed that the 1999 amendments defeated any possibility of liability for earlier non-compliance would present a triable issue of fact if it were properly supported by affidavits or any other evidentiary source listed in Fed. R. Civ. P. 56(e). However, there is no evidence in the record suggesting that any of the plaintiffs possessed such a belief. The plaintiffs' failure to provide any evidentiary support for this assertion means that the evidence in the record points irrevocably to a single conclusion: that the Trustees knew, prior to the effective date of the Policy on April 1, 1999, that the Plan had not complied with minimum accrual rate standards dating back to 1976, and that the 1999 amendments would do nothing to address that deficiency for anyone who had retired in 1996 or before. This prior knowledge would prevent the plaintiffs from recovering under the Policy even if the Trustees' actions in amending the Plan had breached a fiduciary duty created by ERISA or the Trust Agreement.

E.    Claim Expenses

Ulico also has no duty to reimburse the plaintiffs for expenses incurred in the defense of the La Fata action. Coverage B of the Policy requires Ulico to "pay Claim Expenses . . . with respect to claims insured under . . . Coverage A above." This court has determined above that the claims in the La Fata action are not insured under Coverage A of the Policy because no

"Wrongful Act" occurred or was alleged to have occurred. Accordingly, the plaintiffs are not entitled to be reimbursed for expenses incurred in defending the claim.

The plaintiffs attempt to resist this straightforward conclusion by citing cases standing for the dual propositions that under New York law "there is no relevant difference" between an insurer's obligation to pay defense expenses and an insurer's duty to defend, and that an insurance company must take up the defense of an insured "if the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased." See Bodewes v. Ulico Cas. Co., 336 F. Supp. 2d 263, 271 (W.D.N.Y. 2004) (collecting cases). The plaintiffs' argument is not persuasive.

First, other federal courts construing New York law have declined to read contract language creating an obligation to pay defense expenses as incorporating a duty to defend. See, e.g., In re Ambassador Group, Inc. Litig., 738 F. Supp. 57, 61-62 (E.D.N.Y. 1990) ("in the absence of a policy provision expressly imposing a duty to defend, New York courts will not find such a duty") (citing Henderson v. Aetna Cas. & Sur. Co., 434 N.E.2d 247 (N.Y. 1982) and Chrapa v. Johncox, 401 N.Y.S.2d 332 (N.Y. App. Div. 1977)); In re Kenai Corp., 136 B.R. 59, 63 (S.D.N.Y. 1992). Second, even assuming *arguendo* that Ulico bears a duty to defend the claims brought against the Trustees, it is well established that an insurer's duty to defend vanishes once it becomes clear that the claims raised against the insured are not covered by the policy. PepsiCo, Inc. v. Continental Cas. Co., 640 F. Supp. 656, 660 (S.D.N.Y. 1986) ("a liability insurer has a duty to pay all defense costs until it can confine its duty to pay only on those claims it has insured the policy holders against"); Allstate Ins. Co. v. Bostick, 646 N.Y.S.2d 128, 129 (N.Y. App. Div. 1996) (citing Villa Charlotte Bronte, Inc. v. Commercial

24

Union, 476 N.E.2d 640 (N.Y. 1985)) ("a carrier can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision"). Here, Ulico has demonstrated on this motion for summary judgment that, as a matter of law, it has no obligation to indemnify the Trustees for any "Loss" occasioned by a "Wrongful Act" of an Insured. Accordingly, Ulico no longer is under any obligation to reimburse the plaintiffs for their defense costs, assuming *arguendo* that it ever was.

## V.     Conclusion

For the reasons set forth above, I adopt Judge Pohorelsky's recommendations and hereby grant summary judgment to Ulico as to all of the plaintiffs' claims. The oral argument scheduled on this motion for September 16, 2005 is therefore cancelled. The Clerk of Court is directed to close this case.


SO ORDERED.


Dated: September 13, 2005                              _____/s/_____
       Brooklyn, N.Y.                              Nicholas G. Garaufis
                                     United States District Judge